## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MICHAEL A. McNEASE et al,

Plaintiffs,

v.

DEPUTY GIZELL LALDEE et al,

Defendants.

Case No. 19-cv-7280

Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Michael A. McNease ("McNease"), Gladys R. French, Administrator of the Estate of Donicse A. Redmond, Maurice McNease, and TM, a minor child, by and through Michael A. McNease, her natural father and next friend ("Plaintiffs"), bring this action pursuant to 42 U.S.C. § 1983 ("§ 1983") alleging that Defendants violated their constitutional rights under the Fourth and Fourteenth Amendments.[1]  Before the Court is a motion to dismiss by four Cook County Sheriff's Deputies: Deputy Gizell Laldee, Deputy Ralph Marroquin, Deputy Christopher Kolasa, and Deputy Timothy Wilson ("Defendants" or "Deputies").  (Dkt. 38).  For the reasons stated below, this motion to dismiss is granted in part and denied in part.

## Background

The following factual allegations are taken from the Amended Complaint (Dkt. 37) and are accepted as true for the purposes of this motion to dismiss. *See W.*

---

[1] The Amended Complaint also contains state law claims against Defendant Lavano Foster, who is in default. Those claims will not be addressed here. The Sheriff's Deputies are named only in Counts I, II, and III.

1

*Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016). Plaintiffs were tenants at a residential property located at 756 East 148th Street in Dolton, Illinois from 2008 until 2017. The property was in need of repair, and in May of 2017 McNease asked his landlord, Lavano Foster ("Foster") to address a broken water pump, basement flooding, the smell of sewage, and ceiling leaks. Foster did not address these concerns, so in June of 2017 McNease reported this damage to the Housing Authority. After a subsequent inspection, Foster was ordered to make repairs.

In an act of retaliation, Foster went to the Circuit Court of Cook County on July 21, 2017 and filed a forcible entry and detainer action against McNease. This action falsely alleged that McNease owed $748.00 in overdue rent and requested an order of possession with which to evict him. McNease was never served a summons. Instead, Foster arranged to have another individual, impersonating McNease, accept personal service at a different residential property he owned (12874 Green Street, Chicago, IL 60628).

On August 24, 2017, McNease paid Foster $748.00 via money order (although he contends that this money was not yet owed). In exchange, Foster agreed not to pursue eviction. However, the next day Foster went to court and obtained a default judgment against McNease, and an order of possession valid for 120 days. Only McNease was named in this order of possession, not his partner or children. On or about September 18, 2017, Foster paid to have the Cook County Sheriff's Department

2

evict McNease. The Sheriff's Department mailed McNease a "final notice" of this eviction on October 4, 2017.

The next day on October 5th, McNease went to court and provided proof of the $748.00 money order. The court vacated the order of possession. McNease filed a copy of the October 5th order with the Cook County Sheriff's Department. He also provided a copy of this order to Foster and continued to pay rent from July through October.

Nevertheless, on November 6, 2017, McNease and his family were evicted by four Sheriff's Deputies: Deputy Gizell Laldee, Deputy Ralph Marroquin, Deputy Christopher Kolasa, and Deputy Timothy Wilson. They entered the McNease residence (which had been locked), changed the locks, and gave Foster possession of all personal property in the home. They also opened and searched all of the drawers in the home, taking photographs of their contents.

McNease returned from work to find this eviction taking place, and was not allowed to enter his residence. He explained to the Sheriff's Deputies that he had an order vacating the order of possession, but they refused to allow him to retrieve it. Foster, who was also on the premises, admitted that the eviction was retaliatory, saying "What the fuck you thought—you goin' to report me?" Foster and "his agents" (though not, apparently, the Sheriff's Deputies) then removed most of the McNease family's belongings from the residence, including the contents of a safe, and destroyed the remaining items.

On November 6, 2017, the day of his eviction, McNease filed an emergency motion to vacate the order of possession once again. That motion was granted on

November 7, 2017, and because the order was difficult to read a second order was produced on November 8, 2017. McNease and his family took up residence in their home once again, and Foster was ordered to return all the personal property he had removed or pay a fine of $100.00 per day. As of the date the Amended Complaint was filed, Foster had yet to return that property or pay his fine, and he has been found in civil contempt of court.

## Legal Standard

A motion to dismiss tests the sufficiency of a complaint, not the merits of the case. *See Gibson v. City of Chi.,* 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quotations and citation omitted). *See also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). A court deciding a Rule 12(b)(6) motion accepts the plaintiff's well-pleaded factual allegations as true and draws all permissible inferences in the plaintiff's favor. *Fortres Grand Corp. v. Warner Bros. Entm't Inc.,* 763 F.3d 696, 700 (7th Cir. 2014). A plaintiff need not plead "detailed factual allegations", but "still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate under Federal Rule of Civil Procedure 8." *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016) (citation and internal quotation marks omitted).

4

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 127 S. Ct. 1955, 1966 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

## Analysis

The Sheriff's Deputies make various arguments in support of their motion to dismiss. These are addressed in turn, below.

### I. Immunity

#### A. Sovereign Immunity

States and state agencies are immune from suit under the Eleventh Amendment "unless the state consents or Congress abrogates the state's immunity." *Thomas v. Sheahan*, 370 F. Supp. 2d 704, 708 (N.D. Ill. 2005) (citing *Scott v. O'Grady*, 975 F.2d 366, 369 (7th Cir. 1992)). Whether the Cook County Sheriff's Department or the Sheriff's Deputies are considered a state agency or state agents when being sued in their official capacities depends on whether they "act[ed] to enforce court orders issued by state courts." *YHWHnewBN v. Cty. of Cook, IL*, No. 02 C 5371, 2003 WL 22736216, at *1 (N.D. Ill. Nov. 19, 2003) (citing *Scott v. O'Grady*, 975 F.2d 366, 369 (7th Cir. 1992)). But here, the Court "need not determine whether the sheriff's deputies are state officials in order to weigh defendants' argument that they are entitled to Eleventh Amendment immunity, because they were not sued in their

5

official capacity." *Thomas v. Sheahan*, 370 F. Supp. 2d 704, 708–09 (N.D. Ill. 2005). This is because the Eleventh Amendment does not bar claims brought against state officials in their individual capacities. *See Hafer v. Melo*, 502 U.S. 21, 27–28 (1991); *see also Freeman v. Univ. of Illinois at Chicago*, No. 17 CV 1776, 2018 WL 701282, at *2–3 (N.D. Ill. Jan. 29, 2018). McNease is suing the Deputies in their individual capacities. *Compare Giljen v. Dart*, No. 11 CV 5581, 2012 WL 1284006, at *3 (N.D. Ill. Apr. 16, 2012) (County Sheriff sued in his *official*, not individual, capacity was a state actor when he carried out an eviction and therefore had sovereign immunity under the Eleventh Amendment). These Deputies are not entitled to sovereign immunity.

### B. Quasi-Judicial Immunity

Nor are they entitled to quasi-judicial immunity.[2] As a general rule qualified, not absolute, immunity "is sufficient to protect law enforcement officers in the conduct of their official duties." *Richman v. Sheahan*, 270 F.3d 430, 434 (7th Cir. 2001) (citing *Malley v. Briggs*, 475 U.S. 335, 340–41 (1986); *Pierson v. Ray*, 386 U.S. 547, 557, (1967)). Judges, by contrast, are entitled to absolute immunity with regard to their judicial conduct. *See Mireles v. Waco*, 502 U.S. 9, 11–12 (1991). The purpose of judicial immunity, and by extension quasi-judicial immunity, is to confine disputes over judicial decisions to the appellate process and protect judicial independence. *See*

---

[2] The Seventh Circuit has held that "quasi-judicial immunity is a defense too steeped in facts for resolution on a motion to dismiss." *Schneider v. Cty. of Will, Ill.*, 528 F. App'x 590, 592 (7th Cir. 2013) (denying Sheriffs quasi-judicial immunity). The Court is prepared to rule on this issue, but if the factual record develops during discovery in a manner that contradicts relevant allegations in the Amended Complaint, the Deputies may raise this argument again.

*Richman*, 270 F.3d at 434–35 (citations omitted). The Seventh Circuit has occasionally extended quasi-judicial immunity to certain "subordinate" officials when "functions that are more administrative in character have been undertaken pursuant to the explicit direction of a judicial officer" in order to "prevent court personnel and other officials from becoming a lightning rod for harassing litigation aimed at the court." *Id*. at 435 (citing *Kincaid v. Vail*, 969 F.2d 594, 601 (7th Cir. 1992); *Ashbrook v. Hoffman*, 617 F.2d 474, 476 (7th Cir.1980)).

The Defendants principally rely on one case in their briefs: *Henry v. Farmer City State Bank*, 808 F.2d 1228 (7th Cir. 1986). There the defendants were officers who had evicted the plaintiff based on a valid order of possession. The Seventh Circuit found quasi-judicial immunity, saying that "[t]he proper procedure for a party who wishes to contest the legality of a court order enforcing a judgment is to appeal that order and the underlying judgment, not to sue the official responsible for its execution." *Id*. at 1239. The Seventh Circuit has since distinguished that case, however, saying that it only "recognized absolute immunity for law enforcement officials [. . .] enforcing a foreclosure judgment" because "the source of the plaintiff's wrong in *Henry* was *the judge's order itself*, and we reasoned that a suit against the officers was not the appropriate vehicle for challenging the validity of that order." *See Richman*, 270 F.3d at 436–37 (citing *Henry*, 808 F.2d at 1238–39) (emphasis added). Moreover, "the extension of absolute immunity is not primarily to protect the enforcement function performed by the deputies, but rather to protect the judicial decision-making function by discouraging collateral attacks and encouraging

appeals." *Id*. Arguments in favor of quasi-judicial immunity for officers therefore "have less force when, as in this case, the challenged conduct is the manner in which the judge's order is carried out, and not conduct specifically directed by a judge." *Richman*, 270 F.3d at 437 (citations omitted).

McNease is not suing the Deputies as a means of circumventing the appeals process because he disagrees with the contents of the order of possession they were enforcing. In fact, he went through the appeals process in a timely manner getting the August order of possession vacated. Nor is he trying to harass the court that passed down that order. Rather, he is suing the Deputies because of the *manner* in which they carried out the eviction. Specifically, their failure to take notice of the fact that the order of possession had been vacated, their refusal to allow McNease to retrieve and present proof of that fact, and their invasive search of his drawers during the eviction. Therefore, the Deputies are not entitled to quasi-judicial immunity.

### C. Qualified Immunity

Qualified immunity "protects government officials from damages liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Campbell v. Kallas*, 936 F.3d 536, 545 (7th Cir. 2019) (quotations and citations omitted). The Plaintiffs allege violations of various constitutional rights, but both the Deputies and the Plaintiffs confine their qualified immunity arguments to the Fourth Amendment.

First the Court must determine whether the Plaintiffs have alleged that their constitutional rights were violated. The Deputies point out that the Seventh Circuit

8

has held that residents are no longer protected by the Fourth Amendment when they have been evicted, because after eviction they have "no lawful right to be in the residence." *United States v. Curlin*, 638 F.3d 562, 565 (7th Cir. 2011). But McNease and his family *did* have a lawful right to their home and its contents because the order of possession had been vacated. Therefore, the Plaintiffs have made allegations sufficient to allege that a Fourth Amendment violation.

The Court's next inquiry is whether this was a *clearly established* constitutional right of which *a reasonable officer would have known*. It is clearly established that the seizure of a dwelling and its contents during eviction pursuant to an invalid order of possession can trigger the Fourth Amendment. *See, e.g., Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 58, 68–69 (1992) (Fourth Amendment right to be free from unreasonable seizures was implicated when the owner of an Illinois trailer park evicted a resident and seized his trailer two weeks before eviction proceedings were scheduled to conclude with the assistance of Sheriffs); *see also Zoretic v. Darge*, 832 F.3d 639, 644 (7th Cir. 2016) (Sheriffs not entitled to summary judgment on Fourth Amendment claims where they had entered home to evict occupants pursuant to an outdated order of possession that had merely been re-stamped by the clerk of court). The order of possession that prompted the Plaintiffs' eviction was, by the time it was executed, invalid.

But in the case now before the Court, the dispositive question is whether a *reasonable officer would have known* that their actions violated clearly established law under the circumstances described in the Amended Complaint. The Deputies do

not seriously contest whether an eviction pursuant to an invalid order of possession would be unconstitutional. Rather, they argue that because the order of possession appeared valid, a reasonable officer would not have known they were violating a constitutional right.

The Plaintiffs argue that a reasonable officer would have known the order was invalid for three reasons. First, because it only named McNease not his family members. Second, because McNease had filed the order vacating that order of possession with the Sheriff's office under the same case number a month before the eviction. And third, because McNease himself offered to show the Deputies a copy of the order vacating the order of possession during the eviction.

First, the fact that only McNease was named on the order of possession does not mean that a reasonable officer would have known they were executing an invalid order. The Plaintiffs allege "upon information and belief" that the Cook County Sheriff's policy is only to evict individuals specifically named in an order of possession (Dkt. 37, ¶ 36–37). The Court assumes, for the purposes of this motion, that the Plaintiffs have accurately described the Sheriff's policy.[3] However, even assuming the Sheriff's office *usually* only evicts named tenants does not mean that a valid order

---

[3] This is a generous assumption. Elsewhere in their briefs the Plaintiffs cite *Rembert v. Sheahan*, No. 92 CV 0067, 1994 WL 325796, at *4 (N.D. Ill. July 7, 1994), vacated, 62 F.3d 937 (7th Cir. 1995). In vacating *Rembert,* the Seventh Circuit noted that "[i]n 1993 [the Cook County] Sheriff apparently changed his eviction practices[.] Although the new practice was to evict only tenants personally named in the order of possession, the new practice had two exceptions. First, if one person named in the order of possession was found to reside on the premises, all occupants would be evicted. [. . .] The record fails to reveal exactly what the Sheriff's present practice is, however." *Rembert v. Sheahan*, 62 F.3d 937, 940, 942 (7th Cir. 1995).

of possession only *authorizes* it to evict named tenants.[4] The Plaintiffs have not adequately alleged that the order of possession was invalid against McNease family members on its face. And moreover, the inclusion of only one name, even if in error, would not have prompted a reasonable officer to inquire about the validity of the order more generally, or to discover the subsequent order that invalidated it.

The fact that McNease filed an order vacating the order of possession with the Sheriff's Department on October 5, 2017, over a month before his eviction on November 6, 2017, is more persuasive. According the Amended Complaint, McNease brought the vacating order to the Sheriff's Department at the Daley Center the same day he obtained that order.[5] (Dkt. 37, ¶ 25). Despite the Defendants' arguments to the contrary, the October 5th order is recognizably labeled with the same case number as the earlier order of possession it vacated, although the case numbers are in slightly different formats ("17-m6-7347" and "2017 600 7347" respectively). (Dkt. 37, Exs. C, D).[6] The vacating order says, in legible handwriting, "Mr. McNease in court to vacate the 8-25-17 order of possession." It goes on to note that McNease "show[ed] the Court a money order for $748.00 payable to Lavano Foster, dated 8-24-

---

[4] The Deputies note that 735 ILCS 5/9-107.5 allows "unknown occupants not named in the initial summons" to be evicted and gives them seven days after eviction to contest the order of possession by filing a written petition with the clerk of the court that issued that order.

[5] Plaintiffs also argue in their briefs that in response to this filing the "Sheriff's Office acknowledge[d] receipt." (Dkt. 41, 11). Because this fact does not appear in the Amended Complaint, the Court did not consider it while deciding this motion.

[6] The court may consider "documents attached to the complaint[s], documents that are critical to the complaint[s] and referred to in [them], and information that is subject to proper judicial notice," along with additional facts set forth in Plaintiffs' opposition briefs, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013) (internal quotation marks omitted).

17" and concludes that on those grounds "the O.P. of 8-25-17 is vacated." (emphasis original). *Id.*

Third, McNease himself offered to show the Deputies a copy of this order when they came to evict him. If, due to some oversight or clerical error, the Deputies were not appraised of the vacating order when they arrived, this ought to have prompted them to make further inquiries. They need not have allowed McNease to enter his home if they believed that presented a security risk. Instead, they could have entered the home and retrieved the order themselves, or called their own filing administrator to verify whether the order of possession had indeed been vacated.

One final note, the Seventh Circuit has observed that "a complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds." *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001). This is because "the plaintiff is not required initially to plead factual allegations that anticipate and overcome a defense of qualified immunity." *Jacobs v. City of Chicago*, 215 F.3d 758, 765 n.3 (7th Cir. 2000). When the Court "would greatly benefit from a more robust record" and qualified immunity "depends on 'particular facts'" not yet in the record, declining to dismiss at the pleading stage is appropriate. *Reed v. Palmer*, 906 F.3d 540, 553 (7th Cir. 2018).

Viewing the facts in the Amended Complaint in the light most favorable to the Plaintiffs, the Court concludes that they have pled facts sufficient to show that it was unreasonable for the Deputies to not have verified the status of the order of possession. *See Campbell v. Kallas*, 936 F.3d 536, 546 (7th Cir. 2019) ("[Q]ualified

immunity protects all but the plainly incompetent or those who knowingly violate the law."). The Plaintiffs may proceed with their Fourth Amendment claims against the Deputies, and the Deputies may raise their qualified immunity arguments following discovery.

## II. Failure to State a Claim

### A. Fourth Amendment Claims

For the reasons set forth above, the Amended Complaint includes allegations sufficient to plausibly implicate the Fourth Amendment. Based on these allegations, the Court concludes for purposes of this motion to dismiss that the home and its contents were seized, the drawers were searched, and their contents were photographed by the Deputies. Next, the Court must determine whether, taking the facts in the Amended Complaint as true and drawing all reasonable inferences in the Plaintiffs' favor, they state a claim that those searches and seizures were unreasonable.

The Deputies seized the home and its contents in order to transfer possession to Foster. They have articulated no reason for doing so other than to execute the invalid order of possession. The Plaintiffs may move forward with this claim.

Although they deny searching or photographing the contents of drawers,[7] the Deputies argue, in the alternative, that this was a "protective sweep conducted during an eviction that may have gone too far." (Dkt. 38, 7). A protective sweep could

---

[7] The Deputies also argue that Foster, the landlord, was the one who searched and photographed the drawers. This may be born out in discovery, but it is not what the Plaintiffs allege in their Amended Complaint.

independently justify those searches, if it were reasonable. The Fourth Amendment rights of the McNease family must be balanced against the safety of the Deputies. However, both sides acknowledge courts in this district have held that not all protective sweeps performed during evictions are reasonable. *See Thomas v. Sheahan*, 370 F.2d 704, 712 (N.D. Ill. 2005) (citing *Maryland v. Buie*, 494 U.S. 325 (1990) and *Soldal*, 506 U.S. at 66–67) (issue of fact existed as to whether protective sweep was reasonable during eviction when only occupants were two sleeping children and plaintiff blocked the doorway). The Deputies provide no caselaw suggesting that searching drawers or photographing their contents was necessary to protect officer safety. *Compare, Curlin*, 638 F.3d at 564 (protective sweep of bedroom and walk-in closet reasonable because plaintiff had threatened to barricade himself in and use a gun to resist eviction). The Plaintiffs have stated a cause of action in Count I.

## B. Fourteenth Amendment Procedural Due Process Claims

Count II of the Amended Complaint alleges that "Defendants [. . .] denied Plaintiffs their Fourteenth Amendment procedural due process rights by evicting them pursuant to a void Order of Possession" and by "failing to provide Plaintiffs with reasonable notice prior to their eviction." (Dkt. 37, ¶¶ 60–61). Procedural due process guarantees notice and the opportunity to be heard, *see Fuentes v. Shevin*, 407 U.S. 67, 80 (1972), and an eviction is a deprivation of property rights to which the procedural due process protections of the Fourteenth Amendment attach. *See Greene v. Lindsey*, 456 U.S. 444, 454 (U.S. 1982). The Plaintiffs' allegations fall short of

showing a denial of procedural due process under the Fourteenth Amendment, however.

McNease received mailed notice that he was going to be evicted on October 4, 2017. It was this notice that prompted him to seek an order vacating the order of possession. He had the opportunity to be heard on October 5, 2017, when he took that notice to state court and had the order of possession vacated. The day after his wrongful eviction, he again had the opportunity to be heard when the state court returned him to his home and ordered Foster to return all of his property or pay a fine of $100.00 per day.

The state court had no reason to send McNease a summons or a notice of eviction after the October 5th notice, because as far as it was concerned there was no valid order of possession pending. It had no reason to give him an additional hearing before his eviction because the eviction had been vacated. The Sheriff's Department had no reason to send McNease additional notices for the same reason; McNease had filed an order vacating the earlier order of possession. McNease did not receive a second notice prior to his eviction because that eviction seems to have been, to quote the Seventh Circuit and the United States Supreme Court, "random and unauthorized." *Hansen v. Cannon*, 122 F. App'x 265, 270 (7th Cir. 2004) (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)) ("eviction without a court order is a good example of "random and unauthorized" action"). And "when deprivations of property are effected through random and unauthorized actions of state employees and the state provides an adequate post-deprivation remedy, the requirements of due process

are satisfied, and the plaintiff may not maintain a § 1983 suit in federal court." *Wilson v. Civ. Town of Clayton, Ind.*, 839 F.2d 375, 383 (7th Cir. 1988) (affirming dismissal of procedural due process claims against Marshals after erroneous eviction). Count II is dismissed with prejudice.

### C. Fourteenth Amendment Equal Protection Claims

The Plaintiffs allege that "Defendants [. . .] treated all four Plaintiffs, who are black Citizens of the United States, differently during the course of the eviction because of their race and deprived them of their equal protection as required by the Fourteenth Amendment of the United States Constitution." (Dkt. 37, 65). This is a conclusory statement, which the Court need not credit when ruling on a motion to dismiss. *See Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016). No facts in the Amended Complaint suggest that the Deputies acted with discriminatory intent when they evicted the Plaintiffs, or treated the Plaintiffs differently than citizens of other races in similar circumstances. *See, e.g., Logan v. City of Evanston*, No. 20 CV 1323, 2020 WL 6020487, at *5 (N.D. Ill. Oct. 12, 2020) (To survive a motion to dismiss and "state a claim for violation of equal protection, the plaintiff must allege that (1) he is a member of a protected class; (2) he was similarly situated to individuals who are not in the protected class; (3) he was treated differently from those persons; and (4) the defendant acted with discriminatory intent."); *compare, Cui v. Elmhurst Police Dep't*, No. 14 C 8330, 2015 WL 5462138, at *5 (N.D. Ill. Sept. 17, 2015) (equal protection violation claim against officer conducting eviction survived motion to dismiss because Asian American tenant alleged officer believed his white landlord's

version of events over plaintiff's). The two cases cited by the Plaintiffs in their responsive brief are not to the contrary. See *Stevens v. Housing Authority of South Bend*, 720 F. Supp. 2d 1013, 1032 (N.D. Ind. 2010) (dismissing equal protection claim because evicted plaintiff "failed to set forth any evidence that [her landlord] intentionally discriminated against her based on race in its decision to terminate her lease."); *see also New Burnham Prairie Homes, Inc. v. Vill. of Burnham*, 910 F.2d 1474, 1481 (7th Cir. 1990) (affirming summary judgment on equal protection claim because plaintiff had merely alleged he was "treated unfairly as an individual" not as a member of a protected group). Count III is dismissed without prejudice.

## Conclusion

For the stated reasons, Defendants' Motion to Dismiss (Dkt. 38) is granted in part and denied in part. Counts II is dismissed with prejudice and Count III is dismissed without prejudice.

E N T E R:

Dated: March 18, 2021

MARY M. ROWLAND
United States District Judge

17